[Civ. No. 495. Fourth Appellate District.—August 17, 1931.]

ALTA I. PETERS, Appellant, v. CALIFORNIA BUILD-
ING–LOAN ASSOCIATION, Respondent.

Doyle, Clark, Thomas & Johnson for Appellant.

Hill, Morgan & Bledsoe, Roscoe R. Hess, Kenneth K. Wright, Wesley L. Nutten, Jr., and Flint & MacKay for Respondent.

GRIFFIN, J., *pro tem.*—This is an action brought by appellant against respondent under the provisions of section 29, subdivision b, of the Workmen's Compensation Act (Stats. 1925, p. 494), which, in brief, provides that in the event an employer fails to insure, the employee, or in the case of death, his dependents, may bring an action for damages against the employer as though the act did not apply, with the provision that negligence of the employer shall be presumed in such case, and certain defenses otherwise applicable to an action at law for negligence are taken from the employer.

The evidence discloses certain facts most of which are uncontradicted. Appellant and K. S. Peters were married February 20, 1894, and continually lived together as husband and wife until his death on or about June 2, 1926. During the latter part of the year, 1924, Peters called upon W. T. Moore, manager of the respondent association, and orally applied for a position whereby he could earn some money by selling shares of stock of the association. He inquired into its financial condition and agreed to accept the commissions which the company paid if he perfected any sales of their securities. He asked Moore especially not to make any definite or fast arrangement in connection with his work because of certain conditions which he was then laboring under and which might interfere. Because of this request Moore told him that he did not need anything but the regular rules that they were offering, and that he was not bound to do anything definite other than to bring in subscriptions.

A license from the corporation commissioner to act as agent and solicitor for the association was secured by Peters, apparently with the approval, or at the request of the association. The terms of the oral agreement between Peters and the association as to his employment were known only to Peters and Moore.

Respondent furnished Peters with business cards on which appeared the name of the association, the name K. S. Peters,

together with the statement "with the California Building-Loan Association". They also furnished him with literature explaining the character and nature of the membership shares and the conditions under which they were to be sold. They instructed him that the only condition which the association imposed upon a salesman was that he must understand the conditions of sale and that if he or any other salesman misrepresented any of the shares to any purchaser, he, Moore, for the association, would ask the commissioner of corporations to cancel his license.

Peters was given the privilege of selling wherever and to whom he pleased without restriction except that the association reserved the right to refuse applicants for shares if they did not deem them responsible. He entered upon his duties soliciting and selling in various southern California cities receiving his commissions on sales made. It was his habit to report to the association office Saturdays to receive his commission check and to attend meetings of the salesmen. Attendance at these meetings was not compulsory, but was for the mutual benefit of the salesmen in exchanging experiences and information. Neither he nor any other salesman was furnished with an automobile or any other transportation, nor did the company make payments for expenses in the way of gasoline, oil or anything else. During the middle of the year, 1925, Mr. Peters occupied an office in Long Beach from which he operated to take subscriptions. He maintained this office at his own expense and during this period employed other salesmen and split his commissions with them. He was not given any special assistance in his work, but occasionally when the office learned of a prospective buyer, he or some of the other salesmen would be told about him. Certain papers were sent out by the association to its membership on which they were asked to suggest other people who might be prospective buyers of shares. It was customary to turn these over to the salesman who had procured the recommending member.

The last time Mr. Moore saw Mr. Peters was near the middle of May, 1926. This was after Peters had returned from a trip to Death Valley. At that time he brought in some shares which he had sold in Death Valley, stating that he had thought it advisable to go out there to get some

applications and asked if Moore would accept them. After some discussion they were accepted and Peters was paid his commission. Nothing was said about his going back to Death Valley, but about June 1, 1926, without the knowledge of Moore or the association, he again started to Death Valley Junction. He stayed all night at Barstow and was last seen alive early on the morning of June 2d. About six weeks later his body was found in his car in Death Valley twelve miles from Cave Springs and about three and one-half miles off the main road leading from Cave Springs to Death Valley Junction. At the place where the car turned off from the road there was a sign. This sign did not point in the direction in which this automobile went but pointed in the opposite direction. At the place where the car was found there was no road, just a trail over the desert sand and just the track which had been made by deceased's automobile. Beyond where it stopped there were no tracks. There was evidence that the rear wheels of the car had been jacked up and rocks placed under them and that someone had been working around the car, sage-brush having been placed in the tracks. There was no habitation in this locality. The temperature at the time the body was found, July 12th at 10:30 A. M., was 140 degrees. The certificate of the coroner disclosed the following cause of death: ''Exact cause undeterminable, too badly decomposed, probably heat prostration.'' The deceased was a large man fifty-four years of age, and just prior to his death was in good health, happy and in good spirits.

No insurance was carried by the association on Mr. Peters under the Workmen's Compensation Act. The association had tried to obtain insurance upon him and the other salesmen but was unsuccessful, having been advised by its attorney that it could not be obtained for contract agents.

Before the case went to trial respondent asked for leave to file a supplemental and amended answer to the first amended complaint in which it was alleged that appellant had filed her application before the Division of Industrial Accidents and Safety under the provisions of the Workmen's Compensation Act for the alleged injury sustained by Keith S. Peters, and that after a hearing and rehearing before the department it was determined by the department

that the evidence was insufficient to establish that Keith S. Peters received an injury arising out of, and in the course of any employment with respondent, or that his death was caused by injury, and it was alleged that such decision had become final and was an adjudication between the parties in respect to the matters at issue in this action. The court ruled that such allegations did not constitute a defense as a matter of law, and denied the application to file the same on that ground, but not because of any prejudice which might result to appellant.

The case went to trial before a jury; motion for nonsuit on behalf of respondent was denied; motion for directed verdict on behalf of respondent was denied; the cause was submitted to the jury, together with certain special interrogatories; the jury returned a general verdict for appellant, together with answers to the special interrogatories. Thereafter motion was made by respondent for judgment notwithstanding the verdict, which, after argument and submission, was granted by the court. Thereafter, appellant moved to set aside the judgment notwithstanding the verdict, under section 663 of the Code of Civil Procedure, but that motion was denied. Whereupon appellant appealed, both from the judgment and from the denial of her motion to vacate the judgment.

Appellant contends that the denial of her motion to vacate the judgment notwithstanding the verdict and enter a judgment in accordance with the verdict of the jury, should be reversed and the trial court ordered to enter judgment in accordance with the jury's verdict.

Respondent contends that the judgment of the court in directing a verdict in its favor is amply supported on each and all of five different theories or grounds; first, that the evidence was insufficient to show that the deceased, Keith S. Peters, was an employee of respondent, but on the contrary it establishes that he was an independent contractor; second, the evidence was insufficient to show that the deceased was injured at all, or that death resulted from injury; third, there is no evidence to show that Mr. Peters was in the course of his employment at the time of the injury; fourth, the evidence is insufficient to show that the injury arose other than by reason of hazard to which the common

public was subjected; fifth, the presumption of negligence was rebutted, and in the absence of further affirmative proof by the plaintiff, no recovery could be justified.

The following interrogatories were submitted to the jury resulting in the following answers: "Under the arrangement between Keith S. Peters and the defendant did Keith S. Peters have the right to go where and when he pleased and to exercise his own judgment and discretion as to the parties whom he should seek as purchasers or borrowers or to whom he might present propositions for the purchase of stock and certificates of the defendant or for lending money of the defendant? Answer: Yes." "Has the defendant by a preponderance of the evidence shown that it had no knowledge that Keith S. Peters was going to Death Valley on or about June 1st, 1926? Answer: No." "Has the plaintiff by a preponderance of the evidence shown that the injury causing the death of Keith S. Peters occurred in the course of his employment by the defendant? Answer: Yes." "Has the defendant shown by a preponderance of the evidence that under the circumstances of the case it did what an ordinary prudent person would have done under such circumstances? Answer: No."

The Workmen's Compensation Insurance and Safety Act, section 29, subdivision b, provides as follows: "In such action it shall be presumed that the injury to the employee was a direct result and grew out of the negligence of the employer, and the burden of proof shall rest upon the employer to rebut the presumption of negligence. In such proceeding it shall not be a defense to the employer that the employee may have been guilty of contributory negligence, or assumed the risk of the hazard complained of."

"A directed verdict is proper unless there be substantial evidence tending to prove in favor of plaintiff all of the controverted facts necessary to establish his case. In other words, a directed verdict is proper whenever upon the whole evidence, the judge would be compelled to set a contrary verdict aside as unsupported by the evidence. To warrant a court in directing a verdict it is not necessary that there should be an absence of conflict in the evidence, but to deprive the court of the right to exercise this power, if there be a conflict, it must be a substantial one." (*Jacobson* v. *Northwestern Pac. R. Co.*, 175 Cal. 468 [166 Pac. 3, 6].)

It is to be noted that the presumptions in favor of appellant are clearly specified and will stand as evidence until controverted and overcome by competent evidence. Whether or not these presumptions have been overcome and controverted is usually a question for the jury. (*Smellie* v. *Southern Pac. Co.*, 212 Cal. 540 [299 Pac. 529].) If appellant relies wholly upon these presumptions, and the uncontradicted evidence offered clearly controverts and overcomes them, then the trial court was justified in granting respondent's motion for a verdict in its favor.

In determining whether or not the trial court was justified in directing a judgment for respondent notwithstanding the verdict of the jury, this court must take into consideration the evidence taken before the trial court. The question is this: Was the trial court justified in holding that the evidence was insufficient to establish the fact that K. S. Peters was an employee of respondent, and does it establish the fact that he was an independent contractor? All of the evidence on this question has been fully considered. Its volume prohibits a complete statement of all of the facts and circumstances as gleaned from the evidence and as pointed out in the briefs of appellant and respondent.

"A servant is one who is employed to render personal service to his employer, otherwise than in the pursuit of an independent calling, and who in such service remains entirely under the control and direction of the latter, who is called his master." · (Sec. 2009, Civ. Code.)

Section 8, subdivision b, Workmen's Compensation Act (Stats. 1917, p. 835, sec. 8, subd. 4), defines an independent contractor as follows: "The term 'independent contractor' shall be taken to mean, for the purposes of this act, any person who renders service other than manual labor for a specified recompense for a specified result of his work only and not as to the means by which such result is accomplished."

The facts related in the case of *Barton* v. *Studebaker Corp. of America*, 46 Cal. App. 707 [189 Pac. 1025, 1028], are so similar, and the law as there applied is so applicable to the facts in this case that a restatement of those principles is deemed unnecessary. That was a case where a certain automobile salesman was paid on a commission basis only

by the defendant corporation, for his services in bringing customers to the salesroom and disposing of automobiles owned by the corporation. To close the deal he would bring the customer to the salesroom in his car, paying his own operating expenses. While thus engaged an accident occurred which resulted in injury to one of his customers. The court there held that the salesman was an independent contractor within the meaning of section 2009 of the Civil Code.

The evidence disclosing the nature of the relationship between the California Building-Loan Association and Peters is undisputed, and it is clear therefrom that the relation of master and servant, within the legal definition of that relation as defined by the section of the code above mentioned, and section 8, subdivision b, Workmen's Compensation Act, did not exist between the respondent association and the deceased Peters at the time of his death, and it is also clear that Peters while engaged in the business of procuring applications for shares, was exercising an independent calling. He was, in other words, an independent contractor, and the association had no control over him as to the means by which he was to execute or perform the work which he assumed in his engagement with it.

"The real test as to whether a person is an independent contractor or a servant is whether the person alleged to be the master, under his arrangement with the other party, has or has not any authoritative control of the latter with respect to the manner in which the details of the work are to be performed, and, therefore, this test or element 'must, in the last analysis, always determine what was the essential nature of the relationship between the person who performed the given work and the person for whom it was performed.' (Labatt on Master and Servant, sec. 18, p. 56.)" (*Barton* v. *Studebaker Corp. of America, supra; La Franchi* v. *Industrial Acc. Com.,* (Cal. App.) 298 Pac. 44.)

As evidence of the nature of the relationship existing between the association and Peters, there is the fact that Peters

received no definite compensation, only commissions; that the automobile used by him in soliciting his customers was his own property and that he paid the expense of its maintenance and care and for the gasoline necessary to run it, together with all his other expenses.

But more important than these considerations, which are not always in themselves determinative of the issue (*Press Publishing Co.* v. *Industrial Acc. Com.*, 190 Cal. 114 [210 Pac. 820]; *Easton* v. *Industrial Acc. Com.*, 34 Cal. App. 321 [167 Pac. 288]), and which really involve evidence only tending to show the relationship the probative value of which as disclosing the nature of the relationship must of course be measured by other considerations more directly addressed to the fact, is the fact, clearly and unquestionably established that his business under his engagement with the association was that of seeking and soliciting membership in the association for which he would receive his commission if the applicant was accepted by them, and the further fact that in prosecuting that work he was at liberty under his engagement with the association to go where and when he pleased and to exercise his own judgment and discretion as to the parties whom he should seek as purchasers or to whom he might present propositions for the sale and purchase of the association shares. He was, in other words, perfectly free to choose his own time, place, manner of transportation, and means of seeking and procuring applicants. There was nothing in his agreement with the association to prevent him from employing assistants to aid him in this work, paying them out of his own commissions for any customers they might bring to him, which, in fact he did. In brief, he was perfectly free to prosecute the work he agreed by his contract to do for the association in any manner he saw fit, using such means or methods as to his judgment might seem the most effective for accomplishing the ends of the business. When a sale was made through him, and the applicant accepted by the association, he was paid the stipulated commission but received no compensation unless a sale was effected through him. He was as much engaged in business for himself when prosecuting the work called for by his contract with the association as is the contractor who engages to construct a building for a

stipulated sum of money. And in this case the association could exercise no authoritative control over the work of Peters except perhaps the right to require him to carry out his instructions as to the representations he should make to prospective purchasers of the character and worth of the securities.

■ Appellant lays stress upon the fact that Peters' authority to act for the association was evidenced by a printed card of the latter and on which his name was printed. The character of the relation between Peters and the association was not stated on the card. This is only an evidentiary circumstance and under some circumstances it might be of some value as proof of the nature of the relationship existing between the parties, but in this case it possesses no significance in view of the undisputed evidence disclosing the terms of the agreement. Naturally, whether a servant or an independent contractor, a party engaged to perform for another, acts or work requiring dealings with the public, would carry with him some evidence of his authority to do what he claimed the right to do. (*Barton* v. *Studebaker Corp. of America, supra.*)

We have not thought it necessary to review the many cases cited by appellant in support of her position as to the nature of the relationship existing between the association and Peters. She relies principally upon the holding in the case of *Ocean Accident & Guarantee Corp.* v. *Industrial Acc. Com.,* 87 Cal. App. 290 [262 Pac. 38], which was a case where an employee of a society collected dues on a commission basis. In that case the record contained substantial evidence to support the finding that the manner in which the collector operated was subject to the direction of the board of trustees, and that the "determinative factor" of power or control lay with the latter, not only as to the result proposed to be obtained, but as well to the means and method by which such result was to be accomplished. She also cites *Marks* v. *Hill,* reported in volume 9 Ind. Acc. Com. 274; *Cameron* v. *Pillsbury,* 173 Cal. 83 [159 Pac. 149] ; *Brown* v. *Industrial Acc. Com.,* 174 Cal. 457 [163 Pac. 664], in support of her contention.

Evidence that the association might terminate the employment for breach of agreement at any time does tend to

negative the independence of the employee, but it is not conclusive. (*Press Pub. Co.* v. *Industrial Acc. Com., supra.*)

Respondent contends the evidence is insufficient to show the deceased was injured at all, or that death resulted from injury. This question becomes unimportant unless deceased was found to be an employee, in which case the evidence must establish first, an injury; secondly, that death was the result of the injury sustained in the course of the employment.

"When an employee, without acclimatization *is placed* at work in a locality in which the heat is intolerable to one not acclimated, the special exposure is in excess of the risk of the commonalty, and death from sunstroke is compensable." (27 Cal. Jur., sec. 79, p. 373.) (*Stammler* v. *California Highway Com.*, 9 Ind. Acc. Com. Dec. 275; *Hanley* v. *Union Const. Co.*, 9 Ind. Acc. Com. Dec. 48.) If, under the circumstances disclosed by the evidence in this case, the jury had found that deceased so met his death, it would constitute an injury within the meaning of the Workmen's Compensation Act. However, if the trial court was not satisfied with the verdict, and was convinced that it was clearly against the weight of the evidence then it was its duty to set it aside, even though there may have been some conflict in the testimony. (*Dickey* v. *Davis*, 39 Cal. 565; *Bates* v. *Howard*, 105 Cal. 173 [38 Pac. 715]; *Green* v. *Soule*, 145 Cal. 96–103 [78 Pac. 337].)

While it is true that appellant may be entitled to the presumption of negligence on the part of the employer, if the evidence supports the finding of an injury received arising out of the employment, this however, is not a conclusive presumption but disappears when contradicted or controverted by the evidence of the party relying upon the presumption if the circumstances are such as to afford no indication that the testimony was the product of mistake or inadvertence and the fact so proved is wholly irreconcilable with the presumption sought to be invoked, but this rule is not applicable where the presumption is contradicted by evidence of the party against whom it is invoked. (*Mar Shee* v. *Maryland Assur. Corp.*, 190 Cal. 1 [210 Pac. 269]; *Smellie* v. *Southern Pac. Co., supra.*)

For reasons heretofore stated, the question of the weight to be given this evidence becomes immaterial. The refusal of permission to file respondent's answer setting up as a defense the actions of the commission was justified under the holding in the case of *Marshall* v. *Foote*, 81 Cal. App. 98, 101, 102 [252 Pac. 1075].

For the reasons above stated we are of the opinion that the order of the trial court rendering a judgment in favor of the respondent notwithstanding the verdict, and the order of the court denying appellant's motion to vacate judgment, must be affirmed. It is so ordered.

Marks, J., and Jennings, Acting P. J., concurred.