## BUHLER v. MADDISON.

No. 6822. Decided January 7, 1947. (176 P. 2d 118.)

268

*A. H. Hougaard,* of Salt Lake City, for appellant.

*Delbert M. Draper* and *Clyde & Coray,* all of Salt Lake City, for respondent.

LARSON, Chief Justice.

An action for damages sustained as result of a delayed blast of a dynamite charge while working as a miner on a mining claim in Nevada. The trial court directed a verdict in favor of plaintiff, submitting to the jury only the question of damages. From a judgment for $16,398.70 found and entered in favor of plaintiff, the defendant appeals. By opinion rendered on February 13, 1946, this court reversed the judgment and remanded the cause for a new trial. See *Buhler* v. *Maddison,* 109 Utah 246, 166 P. 2d 205. A rehearing was granted for the reason that the court desired to re-examine the record, it appearing that there was some confusion with respect to the evidence. There has been read into the record several pages of testimony taken on a former trial and only small parts of which pages appearing in this record were admitted in evidence by the trial court. Also the briefs of counsel had discussed and argued the evidence received at the former trial but not received in this one. The petition for rehearing contains a number of petty arguments not sustained by the record, but that is immaterial. We granted rehearing and have re-examined the record and reconsidered the entire case.

The appeal presents for our determination the following matters: (1) The nature of the relationship between appellant and respondent. (2) The legal effect of the presumption of negligence and proximate cause under the Nevada statute. (3) Did the court err in taking the ques-

tion of negligence from the jury and submitting only the question of damages? Or in other words, did defendant produce evidence enough as to freedom from negligence as to be entitled to go to the jury on the question as to whether he had rebutted the presumption of negligence and probable cause? (4) Did the accident arise out of and in the course of employment? (5) Was respondent guilty of such wilful negligence as to preclude recovery under the Nevada Compensation Act?

Plaintiff suffered personal injuries while working on the Lone Pine Lodge mining claims near Elko, Nevada. Defendant and one Grant (both residents of Salt Lake City, Utah) were joint owners of these claims. They had failed to cover their employees with workman's compensation insurance under either the Utah or the Nevada act. On July 2, 1944, plaintiff and his helper, the only two employees, placed a charge of dynamite in a drilled hole in the tunnel, to which was attached a primer—a piece of fuse about 14 inches in length with a cap attached. He lighted the fuse and with his helper retired to a safe place where he waited five to eight minutes. Hearing no explosion he believed the fuse had stopped burning before reaching the cap. As he neared the place of the charge to make a new primer, the charge exploded resulting in the injuries forming the basis of this action. The cause was before this court on a former appeal reported in 105 Utah 39, 140 P. 2d 933, where there is a more complete statement of the facts. Hereafter we shall refer to the evidence only as it becomes of consequence in disposing of the questions presented on this appeal.

The action was based upon defendant's negligence. As pointed out in the opinion on the former appeal (not the former opinion on this appeal), plaintiff could not recover under the common law doctrine of negligence. In that trial, plaintiff without objections from defendant, had put in evidence certain provisions of the Nevada Workmen's Compensation Laws, although he had not pleaded them. We there held that plaintiff's verdict could not be upheld under

the Utah Compensation Laws because the evidence did not justify a finding that defendant had three or more employees, as required by the Utah laws to bring the defendant within their provisions. Because the provisions of the Nevada Workmen's Compensation Act defining employers were not pleaded or introduced in evidence, this court declined to pass on the question of whether respondent was an "employee" and appellant an "employer" under the meaning and terms of that act. It is conceded that neither appellant nor Grant accepted the provisions of the Nevada act by securing compensation, so that if they were within the term "employers" as defined therein the penalties provided thereby against non-accepting employers would be applicable against them. Upon remittitur, appellant filed an amended complaint wherein he set out the provisions of the Nevada Compensation Act; Nevada Stats. 1913, Chap. III, as amended by Nevada Stats. 1919, Chap. 176, Nevada Stats. 1925, Chap 114, as follows:

"Section 7½. The term 'employer,' as used in this act, shall be construed to mean: The state, and each county, city and county, city, school district and all public corporations and quasi-public corporations therein, and every person, firm, voluntary association, and private corporation, including any public-service corporation, which has *any person* in service under any appointment or contract of hire, or apprenticeship, express or implied, oral or written, and the legal representative of any deceased employer." (Italics added.)

"Sec. 7½ (a). The term 'employee,' as used in this act, shall be construed to mean: Every person in the service of an employer, as defined in section 7½, under any appointment or contract of hire or apprenticeship, expressed or implied, oral or written, including aliens, and also including minors, whether lawfully or unlawfully employed, * * *."

The fact that appellant did not have three persons in his employ, one of our grounds for holding before that no recovery could be allowed under the Utah act, has no application under the Nevada statute. The question now is "did appellant have *any* employees?" If so, appellant is a nonaccepting employer under the Nevada Compensation Act,

and the sections referring to such employers apply against him.

Both parties agree that the elements which go to show the existence of an employer-employee relationship, as they have been set out by this court in *Weber County, et al.* v. *Industrial Commission of Utah*, 93 Utah 85, 71 P. 2d 177; and *Murray* v. *Wasatch Grading Co.*, 73 Utah 430, 274 P. 940, correctly state the law. The elements as there outlined, are as follows (93 Utah 85, 71 P. 2d at page 181) :

"(1) Exercise of control over the details of the work, (2) payment of compensation, (3) power of appointment, (4) power of dismissal, and (5) for whose benefit the given work was done."

There is no substantial conflict in the evidence. We are asked to determine whether as a matter of law the evidence presented shows the employer-employee relationship. Without going into a detailed review of the evidence suffice it to say that such relationship is clearly shown by the evidence. We conclude therefore, that respondent was an employee of appellant. The appellant was therefore an "employer" as that term is defined in the Nevada Compensation Act. Since he did not accept that act by securing insurance, the provisions relating to non-accepting employers may be applied against him in this action.

The provisions are to the effect that the employer failing to accept the provisions as to insurance may not escape liability for injury sustained by his employee which

"Arising out of and in the [usual] course of the employment" because:

"(3) That the employee was guilty of contributory negligence, unless and except it shall appear that such negligence was willful and with intent to cause the injury, or the result of intoxication on the part of the injured party;

"(4) In actions by an employee against an employer for personal injuries sustained, arising out of and in the course of the employment where the employer has rejected the provisions of this act, it shall be presumed that the injury to the employee was the first result, and growing out of the negligence of the employer, and that such negligence

was the proximate cause of the injury; and in such case the burden of proof shall rest upon the employer to rebut the presumption of negligence." Para. 2680, Sec. 1(b), Nevada Comp. L. 1931-41.

The question first arises as to the effect and operation of the presumption of negligence and proximate cause established by sub-paragraph (4). Defendant's position is that such presumption shifts only the burden of going forward, and that once the employer has produced evidence to rebut the presumption of negligence, the force of the presumption is spent, and it drops out of the picture.

This is the general rule in this state as to evidentiary presumptions. *Ryan* v. *Union Pacific R. Co.,* 46 Utah 530, 151 P. 74; *Clark* v. *Los Angeles & S. L. R. Co.,* 73 Utah 486, 504, 275 P. 582; *State* v. *Steadman,* 70 Utah 224, 259 P. 326; *State* v. *Green,* 78 Utah 580, 6 P. 2d 177; *Chamberlain et al.* v. *Larsen,* 83 Utah 420, 29 P. 2d 355; *In re Newell's Estate,* 78 Utah 463, 5 P. 2d 230.

Respondent's argument is that the presumption shifts the burden of convincing the judge or jury on the issue of negligence and proximate cause, often called the burden of persuasion—that instead of such burden being upon plaintiff as it usually is, defendant has that burden; that upon proof of the employer-employee relationship; of the injury "arising out of and in the usual course of employment"; and that the employer has not accepted the act relative to insurance, plaintiff is entitled to a judgment as a matter of law, unless the defendant shall produce evidence to the trier of the fact that defendant was not negligent; that in determining such question the presumption of negligence of defendant remains as an element to be weighed with the other evidence by the trier of the fact.

Interpreting this provision, the Nevada court said in *Reeder* v. *Pincolini,* 59 Nev. 396, 94 P. 2d 1097, 1099:

"* * * Aside from the presumptions arising from the statute respondent was under no duty to produce evidence showing negligence on the part of appellants, unless the evidence produced in the case rebutted the presumptions. The trial court did not say that the evidence produced by respondent, considered together with the presump-

tions arising from the statute, *which are evidence in his favor,* does not constitute substantial evidence supporting the judgment. * * *.

"The presumptions of negligence and proximate cause arising from the statute, together with respondent's testimony, constitute substantial evidence supporting the judgment." (Italics added.)

And in *Cahow* v. *Michelas,* 62 Nev. 295, 149 P. 2d 233, 237, it was said:

"There was substantial evidence, *including the statutory presumptions,* to support its findings, and as it is not clear to this court that a wrong conclusion was reached, we must follow the general rule that when the evidence is conflicting and there is substantial evidence to support the trial court's findings, they will not be disturbed on appeal." (Italics added.)

California statutory provisions (Stat. 1937, p. 271, Secs. 3706-3709) are substantially identical, and construing them in *Peters* v. *California Building-Loan Ass'n,* 116 Cal. App. 143, 2 P. 2d 439, 442, the court said:

"It is to be noted that the presumptions in favor of appellant are clearly specified and will stand as evidence until controverted and overcome by competent evidence. * * *."

The above authorities seem conclusive that under the Nevada practice—as also California practice under a similar statute—the presumption set up by the Nevada Workmen's Compensation Act, is evidence and as such to be considered along with any other evidence given by the parties by the trier of the fact. Many of the cases cited by appellant on this question are not in point because they deal with a different type of presumption than the one herein. A distinction must be drawn between what we might call the logical presumption, such as legitimacy of children born in wedlock or delivery of a deed found in the possession of the grantee; and purely legal presumptions set up by statute or decision. It is one of the latter kind with which we are here concerned. Such presumptions do not have their basis in logic; they are established for other purposes — in this case as a matter of public policy, or necessity. Sufficient reason for this presumption of negli-

gence is to place employees of a rejecting employer more nearly upon an equal footing with those whose employer secures insurance and accepts the terms of the compensation act. When an employee covered by the act is injured, there is no question of negligence or contributory negligence —the only matter of inquiry, assuming the injury in course of employment, is the nature and extent of his disability. The legislature provided that in case an employer did not accept the act, his employees should not be placed in an unfavorable position by the failure of the employer to come within the act—that is, proof of defendant's negligence, and the defense of contributory negligence were supplanted by the statutory presumption. So in that regard the employees stand on an equal footing whether their employer accepts or rejects the compensation act. The employer rejecting the compensation act, must not be in a position of vantage as to his injured employees.

This action is prosecuted in the courts of Utah upon a case of action arising in Nevada. The merits of the controversy, the elements of the cause of action, the ■ substantive rights are determined by the law of Nevada; the trial of the action, the procedural matters including the making of proof and rules of evidence are controlled by the law of Utah.

Is the presumption of negligence and proximate cause, involved in this action, a matter of substance, a part of the cause of action, or is it a matter of procedure, a question of evidence, an element of proof? If, the former, the lex loci, the law of Nevada countrols; if the latter, ■■ the lex fori, the law of Utah controls. The question is one of considerable importance because the answer disposes of a number of assignments of error relating to instructions and also to the sufficiency of the evidence. When the situation is one where a different result might be reached according to the rule applied, the court must determine under the law of Conflicts of Laws whether it will apply the rule of the foreign state as a rule of substance or apply the rule of the forum as a rule of procedure.

In determining whether an element of a cause of action is a matter of substance or of procedure, the court will examine the statute or rule of law creating the claimed right or duty, and the interpretations thereof by the courts of state creating the right, or where the cause of action arose. See Restatement, Conflict of Laws, p. 701. If a requirement concerning proof of an element of a cause of action exists in the lex loci, and if such requirement is there interpreted as a condition of the cause of action itself, the court at the forum will apply the rule of the foreign state. This is so because

"the remedial and substantive portions of the foreign law are so bound together that the application of the usual procedural rules of the forum would seriously alter the effect of the operative facts under the law of the foreign state." Restatement, supra, p. 710.

Where a substantive right based upon foreign law is so inseparably connected with matters procedural in nature, that such procedural matters must be enforced in order to preserve the integrity of the substantive right, the court will apply the foreign law in determination of such matters even though procedural in nature. 15 C. J. S., Conflict of Laws, § 9, p. 877; 11 Am. Jur., p. 499; *Precourt* v. *Driscoll,* 85 N. H. 280, 157 A. 525, 78 A. L. R. 874, Annotation 78 A. L. R. pp. 863-891.

There is a distinct division of authority as to whether a presumption such as is involved in this case is a matter of substance or of procedure. The earlier cases predominate in the view that the matter of presumptions as evidence is one of procedure controlled by the law of the forum. In recent times there is a decided drift on the part of courts

"to relegate to the lex loci any question, which though apparently remedial, closely affects substantive rights, or as to the character of which as substantive or remedial, there may exist a difference of opinion." See Annotation 78 A. L. R. 883.

Said the Alabama court in *Helton* v. *Alabama Midland R. Co.,* 97 Ala. 275, 12 So. 276, 285,

"There are classes of cases * * * where rules prescribed by the local law partake of the nature of evidence, and yet so attach to the act or contract as to become a part of the right or obligation itself."

Conclusive presumptions, beyond doubt, prescribe substantive rights, and are not merely rules of remedy. *Prichard* v. *Norton*, 106 U. S. 124, 1 S. Ct. 102, 27 L. Ed. 104. Lord Justice Brett, in The Gaetona & Maria L. R. 7 Prob. Div. (Eng.) 137-CA, stated the distinction thus:

"The manner of proving the facts is matter of evidence, and to my mind, is matter of procedure; but the facts to be proved are no matters of procedure; they are matters with which procedure has to deal."

The rule is not limited to conclusive presumptions, and questions of presumptions and of burden of proof may affect the existence of the right of recovery, and therefore should be controlled by the lex loci. See *Hartman* v. *Louisville & N. R. Co.*, 39 Mo. App. 88; *Hiatt* v. *St. Louis-San Francisco R. Co.*, 308 Mo. 77, 271 S. W. 806; *Ramey* v. *Missouri Pac. R. Co.*, 323 Mo. 662, 21 S. W. 2d 873, certiorari denied 280 U. S. 614, 50 S. Ct. 162, 74 L. Ed. 655. Also Anno. 78 A. L. R. 888.

It seems to be mostly a quibble on words to argue whether the Nevada statute makes the presumption of negligence evidence; or whether it grants the right of recovery against an uninsured employer without proof of negligence; or whether we say the presumption takes the place of evidence. It all amounts to the same thing that plaintiff's right of recovery is in no sense dependent upon proof of negligence.

Is the presumption of negligence and proximate cause here involved so closely connected with the cause of action granted by the statute setting up the presumption, that to apply the rule that such presumption are not evidence to be weighed by the trier of the facts after evidence as to the facts about which the presumption is indulged has been given, would seriously affect or impair the right to damages as granted by the Nevada statute? In other words, is the presumption a material part or element of the right to damages prescribed by the Nevada Act?

The statute quoted supra declares that in actions against an employer for injuries to an employee, it shall be presumed that the injury was the result, and grew out of the negligence of the employer and that such negligence was the proximate cause;

"And in such case the burden of proof shall rest upon the employer to *rebut the presumption* of negligence." (Italics added.)

As indicated supra, this presumption is set up by the statute to place the injured employee of a rejecting employer as nearly as possible on a par with the injured employee of an employer who has accepted the act, as to the establishment of his right to redress. The presumption at the point indicated in the statute is mandatory, and the court or jury can no more refuse to infer the fact or draw the conclusion than they can disregard any other rule of law; it takes the place of other evidence; it controls and dominates until it is overcome by evidence to the contrary more convincing and persuasive. It is a "rebuttable presumption" of the law; one that obtains until overthrown by proof. *Barrow* v. *Territory,* 13 Ariz. 302, 114 P. 975; *Beck* v. *Kansas City Public Serv. Co.,* Mo. App., 48 S. W. 2d 213, 215. It is a procedural assumption of a fact which is prescribed by a rule of the substantive law. It is a rule of the substantive law declaring that for procedural purposes a certain probative force shall be attached to a given state of facts, that is, a certain inference shall be drawn from it, unless and until evidence sufficient to prove the contrary has been introduced. 36 Words & Phrases, Perm. Ed., p. 429; *Metroplitan Life* v. *Goodwin,* 4 Cir., 92 F. 2d 274, 276; *Simpson* v. *Simpson,* 162 Va. 621, 175 S. E. 320, 94 A. L. R. 909.

Note that the statute does not merely authorize an inference of negligence, but requires that such negligence be presumed until the employer *rebuts the Presumption of negligence.* To rebut is to overcome, to contradict, to persuade or convince to the contrary. Unless the employer carries this burden of persuasion, of con-

vincing the jury he was not negligent, the verdict must be for the employee who has met the requirements of proof necessary to invoke the presumption. Since the employer must produce sufficient evidence to overcome the presumption of negligence, of course the jury must weigh the evidence in the light and against the force of the presumption, to determine whether it has been outweighed or overcome. The employee's right of action, as granted by the statute, is one where he has no obligation or duty of showing negligence. For the forum to impose upon him as a part of his cause of action the duty or burden of showing negligence is to require him to maintain a cause of action different from that granted him by the lex loci. It must follow therefore that the statutory presumption of negligence and proximate cause is so closely allied and interwoven with the cause of action itself that it cannot be separated therefrom without seriously impairing the integrity of the cause of action. The law of Nevada, lex loci, and not the law of Utah, lex fori, must govern on the question as to whether the jury could consider and weigh the presumption of negligence, along with the other evidence on the question of defendant's negligence and proximate cause. The trial court applied the Nevada rule, which was the correct procedure.

Plaintiff grounded his cause upon negligence of the defendant in furnishing defective fuse for blasting operations. By the terms of the statute, defendant is presumed to have been negligent in this particular. The California court, construing a similar statute in *Hicks* v. *Ocean Shore R. R.*, Cal. App., 109 P. 2d 1032, said the statute presumed negligence, not only in the particulars specified in the complaint but in any other particular which might support the verdict. We doubt the rule should go that far. We do not see how a verdict or judgment could be had which determined and was founded upon issues not within the pleadings, how the court could judicially determine a question not juridically before it. How could the court instruct the jury, and upon what matters could a judgment be resadjudicata? How could the defendant rebut the presumption of a negli-

gence which might exist only in the mind of a juror? Or against what presumed negligence would the jury weigh the evidence to determine if the presumption had been rebutted?

But in the instant case we need not go beyond the negligence specified in the amended complaint. Both plaintiff and defendant offered evidence apart from the presumption, as to why the fuse was defective, and as to how such defects could occur. There is no claim that the accident could have been caused by any act of ommision or commission independent of, or apart from, the fuse. It is conceded by both sides that the delayed blast was due to defects in the fuse. The only question arises as to whether the defects in the fuse were due to acts of plaintiff, or were either present when defendant bought the fuse for use by plaintiff or arose thereafter because of handling by defendant, or through his failure to provide plaintiff a safe and dry place to keep the fuse.

The evidence shows that the year before the accident involved in this case a thousand foot spool of Bear Brand fuse had been taken to some mining claims near the Lone Pine claims; part of it had been used, and the balance, about 500 feet on a half spool had been left over winter in a powder magazine on the claims; that the powder magazine was constructed of corrugated iron; that Bear Brand fuse is a standard brand of fuse, a good grade. The day before Buhler went to work, this half spool of fuse was taken from the powder magazine by Grant; at that time the powder magazine was dry. The next day the fuse, some caps and powder were delivered by Grant to Buhler, who put the fuse up under the roof (a dry place) in the cook shack, where Buhler and his helper were living; that the spool remained in the shack and Buhler cut off about 25 feet, as needed which was carried up to the mine and kept in a niche in the side of the tunnel to keep it dry, that the weather was stormy and rainy. It also shows that merely getting wet does not cause defects in such fuse, but might slow up the burning rate; that cold weather does not

cause defects in such fuse although it stiffens the countering and this increases the chances of break in countering by handling, that if a fuse is wet and freezes that might crack or loosen the layers of countering. Breaks in the countering may also occur from rough handling, kinking, bending too sharply, lacing the fuse or tamping too tightly in the hole, and there may be defects in manufacturing, although every run of fuse is tested at the manufacturer's laboratory, and 99% is in good condition when it leaves the factory, that there had been some shots which misfired before the delayed shot which caused this accident. As to the foregoing matters, there is no dispute. In addition, plaintiff testified that the fuse was wet when delivered to him, that he told Grant it was faulty and dangerous to use, and must be dried out before they tried it; that he handled the fuse with care, and never kinked it, that it had not been wet while he had it.

There is no other evidence as to the condition of the fuse when it was delivered to Buhler, or thereafter, except Grant's testimony that it was dry when he delivered it, and such inferences as might properly be drawn from the kind of fuse and what little appears as to where and how it had been kept prior to delivery to Buhler.

Was this evidence such that on the whole record reasonable men could have found that the defects in the fuse which caused the delayed blast were due to the acts of the plaintiff in handling the fuse after he received it? If so, it was a question for the jury as to whether the defendant had overcome or rebutted the presumption of negligence, and the court should not have taken that question from the jury. While contributory negligence is no defense, the finding of such fact may well to the jury overcome and rebut the presumption of negligence and result in a verdict in favor of defendant. Said the Nevada court referring to this statute in *Day* v. *Cloke*, 47 Nev. 75, 215 P. 386, 387,

"The appellant cannot be held liable in the absence of any negligence attributable to him."

Same statement occurs in *Cahow* v. *Michelas,* supra, where the court continues:

"But the burden of proof was on him to rebut the statutory presumptions. In determining whether they had been overcome, it was proper for the trial court [trier of the fact] to take into consideration all the evidence, that of defendant, as well as that of plaintiff." Citing *Reeder* v. *Pincolini,* supra; *O'Brien* v. *Las Vegas & T. R. Co.,* 9 Cir., 242 F. 850; Schnieder's Workman's Compensation Text. par. 129, pp. 341, 342.

Under a similar statute, the California courts in *Hicks* v. *Ocean Shore,* supra, said, 109 P. 2d at page 1035:

"And when the statute declares that an issuable fact shall be presumed, it in effect declares that such presumption is substantial and satisfactory evidence of the fact in issue, and, though it is permitted to rebut the presumption, this merely *creates a conflict for the jury to determine* \* \* \*." (Italics added.) See also *Peters* v. *California Bldg. & Loan Ass'n,* 116 Cal. App. 143, 2 P. 2d 439.

Was the evidence such that from it reasonable men could find that the defects in the fuse, which caused the delayed blast were not in the fuse when it was delivered to the plaintiff, or that if the defects developed in the fuse after delivery to plaintiff, such defects developed as a result of handling, care or neglect of the fuse before delivery to plaintiff? If so, this would present a question for the jury as to whether such were the facts, and if so, did such facts overcome or rebut the presumption of negligence. In resolving whether there was a jury question we must bear in mind that plaintiff need not make any showing of negligence on the part of the defendant; that upon proving the facts of employment and injury in the course therefore, the statute supplies the proof, in the form of mandatory presumptions, that defendant was negligent, in the matters alleged, and that such negligence was the proximate cause of the injury. The defendant, in order to escape a judgment, must convince the court or jury, as the case may be, that he was not negligent in any of the matters alleged in the complaint, as in any way proximately causing the

injury. And the court in determining this question, like a jury, must bear in mind that the presumption is a substantial, a substantive thing which cannot be overlooked or denied, until overcome by evidence so strong that in the face and against the force of presumption it convinces and satisfies the mind that defendent was free from negligence and in considering the evidence against the force of the presumption, he should bear in mind the reason and basis for setting up the presumption, the objective to be affected thereby. The trial court determined that defendant had not produced evidence which in the minds of reasonable men could overcome or rebut the presumption of negligence set up by the Nevada statute, and so took that issue from the jury. If we were weighing against the force of presumption the evidence which was admitted and received by the trial court, we would come to the same conclusion. All other matters argued by the parties were disposed of by our first opinion reported in 166 P. 2d 205, and here we reaffirm the holdings there made. We shall not repeat them here because in view of our present holding on the main question they became unimportant.

To the extent that the prior opinion is not in harmony with this one, it is set aside. The judgment appealed from is affirmed. Costs to respondent.

McDONOUGH, J., concurs.

PRATT, Justice.

I have no difficulty in accepting the Nevada compensation act as giving weight to the presumption. In other words, the facts presumed do not disappear upon the presentation of facts negativing them. Instead they are considered the same as if they were introduced by testimony, and are placed in one pan of the scales of justice that they may be balanced against the facts introduced by testimony negativing them, in the other pan, to see which weighs the more. Naturally the burden falls upon him who must pro-

duce the testimony. The law gives the presumed facts to his opponent.

But I am not so convinced that in this case the presumed facts so outweigh the negative testimony, that we need not resort to the fine balance of the scales to so hold. The reader should not get the impression that because the affirmative facts are presumed by statute, they have become so sacrosanct that they may not be rebutted as easily as if they were the product of testimony of witnesses whom we believe to be telling the truth so far as they know the facts. I do not think the question of whether or not the case should have gone to the jury is as easily decided as the prevailing opinion would have us believe.

I am impressed with the thought that such evidence as dryness of storage place, dryness of fuse, dryness of temporary storage shelf, no complaints from Buhler, and examination before delivery to the employee—the thoroughness of the examination being for the jury to determine— may raise sufficient reasonable inferences to divide reasonable men as to the condition of the fuse at the time of its use. This of course takes Mr. Grant's testimony as true for the sake of the argument. However, nothing will be accomplished by discussing this more, for, if adopted, obviously it is a minority view.

I agree that the facts presumed are limited by the pleadings in this case.

WADE, Justice.

I concur with the result but still adhere to my comments on the law in my previous opinion concurring with the former decision. See *Buhler* v. *Maddison,* 166 P. 2d. at page 213. I now concur with the change in the result because we now understand the evidence to be slightly different from what we previously conceived it to be. In the former opinion it was stated that

"there was evidence that the fuse was * * * purchased in the coil in which it was delivered to plaintiff; that until delivered to plaintiff it had not been wet; * * *".

Under the evidence as now stated there is no showing that during the interval between the time of purchase and the time of delivery to the plaintiff the fuse had not been wet or otherwise damaged. Thus under our changed concept of the evidence defendant failed to make any showing which if believed by the jury would rebut the presumption of negligence against him. Of course as stated in the main opinion this change in our understanding of the evidence resulted from the fact that the transcript of the evidence in a previous trial was attached to the files and referred to in defendant's brief.

The comments above referred to are as follows:

"I concur with the result and generally with the reasoning of Mr. Chief Justice Larson and also with that of Mr. Justice Wolfe, but in certain respects, which I will point out, my views are slightly different from both of those opinions.

"In my opinion, the effect of the Nevada statute creating a presumption of negligence and proximate cause on the part of the employer is simply to shift the burden of persuading the trier of the facts, on those questions, from the employee to the employer. This I understand is the holding of both the Chief Justice and also Mr. Justice Wolfe. I am unable to understand how the trier of the facts can weigh a presumption which is not based on logic or natural inference against direct evidence to the contrary. Since such a presumption does not logically tend to prove the fact presumed it therefore can have no weight in persuading the mind of the trier of the facts. But such a presumption can greatly affect the trial by changing the burden of proof from one party to the other. Thus with the presumption, in the absence of any direct evidence of negligence or if the evidence thereon is evenly balanced, the employee would be entitled to recover, whereas without the presumption the employer would win. In other words, with the presumption the employee would be entitled to recover unless the employer persuaded the trier of the facts that he was not negligent or that his negligence was not the proximate cause of the injury, whereas without the presumption the employee could not recover unless he persuaded the trier of the facts that the employer was guilty of negligence which proximately caused the injury.

"I agree with Mr. Justice Wolfe that this presumption, which has the effect of changing he burden of proof, is substantive in its nature and not merely a rule of procedure, and therefore is binding on the courts of this state in the trial of this case. But even if we were to hold that it is a mere rule of procedure, we would not determine the effect of the presumption by the Utah cases cited by Mr. Chief Justice

Larson, but we would be compelled to hold that the presumption being merely a procedural statute of a foreign state has no application to a case tried in the courts of this state at all, and the case would have to be tried in the courts of this state under the procedural laws of this state applicable thereto the same as though no such statute or presumption in Nevada existed. Certainly under those circumstances we would not hold that the presumption created by a Nevada statute, being a rule of procedure, is binding on the courts of this state but would only have the effect which a presumption ordinarily has in the courts of this state. To my mind, we must either take the presumption created by the Nevada statute and hold that it is binding on our courts, with the interpretation placed thereon by the Nevada courts, or we must hold that it is not binding on the Utah courts and apply the appropriate Utah law which governs this type of case.

"I concur with both the opinion of the Chief Justice and Mr. Justice Wolfe, that in this case the only negligence which should be submitted to the jury is that alleged by plaintiff in his complaint. I, however, am not sure that we can say as a matter of law, that there could be no other possible grounds of negligence other than those alleged. Such a holding would cover a lot of ground. Usually when I think I have covered every possibility someone with a greater imagination than I suggests things that are not only possible but which sound quite probable. To my knowledge no such suggestion has been made in this case. But I do feel confident that where there is evidence submitted on the question of negligence and proximate cause, the consideration of the jury should be limited to the grounds suggested by the pleadings or the proof, and that the jury should not be allowed to speculate on mere possibilities of negligence or proximate cause beyond those limits. And since there were no grounds of negligence suggested by the proof other than those alleged in the complaint it should only be submitted on those grounds. I agree with Mr. Justice Wolfe that this question is one of procedure and not substantive in its nature and therefore we should be guided by our own laws on that question rather than the laws of Nevada."

WOLFE, Justice (concurring specially).

I concur. Since my reasons for concurring vary somewhat in several places from those set forth in the court's opinion, I shall set forth sufficient of my views to note the variances.

I am inclined to the view that no new cause of action was created in favor of an employee whose employer rejected the act but rather that the employee was relegated

to his common law action with certain defenses taken from the defendant and a presumption of negligence created in favor of the plaintiff. Hence no new right was created, but in taking away certain defenses and supplying plaintiff with a presumption not based on logical or natural inference which remains in the case to go to the jury along with rebuttal testimony in place of proof required, a right substantive in nature was created. This right may be looked upon as more than remedial, that is as in enlargement of the previously given primary right by the taking away of certain defenses and the furnishing of a presumption to aid recovery which would seem to be substantive in nature. Another way of looking at the situation is that proof supplied by statute is substantive in nature in that within the framework of the basic right given, an additional right is given to have the defendant presumed negligent at least to the extent to which negligence is alleged. At least I think we can well say that the sort of presumption granted by the Nevada statute is not such as calls for the application of the law laid down in this state in the case of *certain* presumptions, to wit: that they go out of the case where any evidence tending to rebut them is introduced into the case. The Nevada statute itself appears to require that the presumption created by it remain in the case as proof to go to the jury with the rebuttal testimony. This seems to me in nature substantive, perhaps for the reasons specified in the opinion, i. e., that it is so closely interwoven with the basic right to recover for negligence as to make it an inseparable part of that right.

I doubt that the presumption of negligence was introduced in the Nevada act in order to place accepting and rejecting employers "on an equal footing" by eliminating from the action at law negligence and contributory negligence because those elements were eliminated by the Nevada Compensation Act. While contributory negligence is abolished as a defense under the Nevada statute in an action at law unless

"Willful and with intent to cause injury, or the result of intoxication on the part of the injured party",

where the accident was due to the sole negligence of the plaintiff employee, the defense was not eliminated. The statute furnished the plaintiff with a presumption of negligence on the part of the employer and that such negligence was the proximate cause of the injury. But the presumption could be rebutted and while in many cases the employer would not be in position to rebut it and it would thus amount to a virtual elimination of negligence, one cannot say such employee was on an equal footing with the employee whose employer had accepted the act. In some case he might be better off if he would get and collect a judgment large enough to pay his attorneys and have more than compensation would have paid him. In other cases where the employer had convincing evidence to overcome the presumption he might lose altogether and be worse off.

I think the reason for dispensing with the doctrine of contributory negligence and for presuming negligence on the part of the employer who rejects the act was to persuade and even coerce the employer to accept the act. While the failure to accept the act is not made punitive as is the failure to procure insurance under our act, it is highly coercive.

In my special concurrence to the former opinion rendered in this appeal I pointed out that the presumption of negligence on part of the employer furnished a plaintiff by the Nevada statute should be confined to the specific allegations of negligence stating the reasons why I so concluded. I there stated:

"Certainly if a plaintiff can simply allege negligence in general or specifically as to some particular negligence and yet get the benefit of the presumption as to any additional or different negligence which may support a verdict, I see most serious difficulties in making up and presenting issues to the jury. The language in the cases of *Reeder* v. *Pincolini*, 59 Nev. 396, 94 P. 2d 1097, and *Cahow* v. *Michelas*, [62] Nev. [295], 149 P. 2d 233, seems to lean toward the proposition that the presumption furnished the plaintiff employee by the Nevada statute is a presumption that the defendant was guilty of any negligence which would support a verdict for the plaintiff regardless of whether

alleged. I have a serious doubt that the Nevada statute meant to inject into a complaint which only assigned negligence generally any negligence which might reasonably be conceived as giving support to a verdict for the plaintiff. If such be the holding it would seem that the jury might arrive at a verdict on some possible presumed negligence which was never, because of the presumption, specifically brought to its notice and in regard to which the employer might not have produced rebuttal testimony. It would require the court to speculate as to all possible negligences which could support a verdict which were by the presumption, thus broadly construed, injected into the case and then try to determine whether there was rebuttal evidence to go to the jury on all such negligences. If there were not rebuttal evidence on all such conceivable negligences it would seem that a verdict for the plaintiff would have to be directed on the presumed negligence not rebutted. The court would be at a loss as to what issues it was trying. I am of the present opinion that the presumption is one which takes the place of proof but does not dispense with the necessity of allegations of the negligence charged. And as to this matter I think it probable that we would be guided by the law of this jurisdiction rather than by the decisions of the Nevada court for the manner in which an issue is to be pleaded and presented would seem definitely to be a matter of practice and procedure." *Buhler* v. *Maddison*, 109 Utah 245, 166 P. 2d 205, at page 214.

The main opinion on rehearing has adopted this view and Mr. Justice Wade in his concurrence specifically affirms this view point. Hence it is unnecessary to make the observation which I formerly made to the effect that

"I cannot think of any negligence of the employer which could have caused the damage except that alleged."

This will save any strain on my imagination and that of Mr. Justice Wade.