**C. LUDWIG BAUMANN & CO. v. MAR-CELLE, Collector of Internal Revenue et al.**

**No. 167, Docket 22545.**

United States Court of Appeals Second Circuit.

Argued March 3, 1953.

Decided April 7, 1953.

Greenbaum, Wolff & Ernst, New York City (Edward S. Greenbaum, Maurice C. Greenbaum and Charles E. Heming, New York City, of counsel), for plaintiff-appellant.

H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack and Melva M. Graney, Special Assts. to the Atty. Gen., and Frank J. Parker, U. S. Atty., Brooklyn, N. Y., for defendants-appellees.

Before SWAN, Chief Judge, and L. HAND and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Chief Judge.

This is an action brought against a collector of internal revenue and the United States to recover some $64,000, plus interest, paid as a deficiency in income tax resulting from the disallowance of a deduction taken in the plaintiff's tax return for 1942. The case was tried to the court without a jury upon stipulated facts. In an opinion reported in 105 F.Supp. 780, the trial court dismissed the complaint. The taxpayer, which kept its books on the accrual basis, in the year 1942 accrued on its books and claimed as a deduction in its income tax return, an obligation of $132,960 incurred in settlement of a claim for damages asserted against it. The deduction was disallowed.[1] The taxpayer paid the resulting deficiency, filed a claim for refund thereof, and thereafter duly brought the present suit. The question presented by the appeal is whether the obligation so accrued was properly deductible either under § 23(a) (1) (A) as a business expense or under § 23(f) as a loss not compensated for by insurance or otherwise.[2]

The relevant facts are as follows: In 1929 the taxpayer leased a warehouse for a term of 21 years expiring April 30, 1950, at an annual rental of $53,000, plus real

---

1. Due to an arithmetical error by the taxpayer only $129,600 instead of $132,960 was deducted on the income tax return.

2. The Internal Revenue Code, 26 U.S.C.A., reads:
"§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions:
"(a) Expenses
"(1) Trade or business expenses.
"(A) In general. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * * rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.
* * * * * *
"(f) Losses by corporations. In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise."

estate taxes upon the property. Officers and directors of the lessee constituted a majority of the directors of the lessor. By reason of the lessee's majority control of the lessor's board of directors, the lessee was able to obtain from the lessor a series of agreements reducing the rent to such an extent that by December 31, 1942 the rental actually paid by the lessee totalled almost $300,000 less than the rental payments required by the original lease. The lessor had outstanding an issue of bonds on which, because of the reduction in rental payments, the lessor defaulted with respect to interest in 1933 and with respect to principal in 1942. The agreements to reduce the rent were made without the knowledge of the lessor's bondholders and stockholders, who were for the most part the same persons. In December 1940, when they first learned of the rent reductions, a protective committee of bondholders was appointed. This committee asserted against the lessee a claim for damages, and the lessee's counsel advised it that there was a substantial basis for the bondholders' claims. After protracted negotiations a settlement was reached in December 1942 pursuant to which the lessee agreed to pay the lessor's bondholders the sum of $132,960, of which $12,960 was payable forthwith and the balance of $120,000 in 24 quarterly instalments of $5,000 each, all said sums to be paid ratably in proportion to the amount of bonds held by the respective bondholders. In consideration thereof the bondholders released the lessee from all liability on their claims for damages.[3] Being on the accrual basis, the lessee accrued on its books the full amount of the settlement in the year in which the settlement agreement was made.[4] At that time, December 1942, the principal amount of bonds outstanding was $129,600 and accrued

interest thereon was $95,004. The total fair market value of the outstanding bonds was $10,666.11, and the lessor's stock was valueless.[5]

In support of the judgment below the appellees argue that the bondholders' cause of action, if any, was against the individuals who as directors of the lessor authorized reductions in rent in violation of their fiduciary duties, and consequently, in settling the claim, the taxpayer voluntarily assumed the liability of these individuals and cannot deduct such a voluntary payment of another's liability as an ordinary and necessary business expense.[6] It may well be that the lessor's directors were individually liable for breach of trust. Assuming that they were, it does not follow that the lessee was not also liable. They were acting in the interest of the lessee; it was the only beneficiary of the rent reductions. Had the full rental been paid and had the faithless directors then handed back to the lessee the amounts by which they agreed the rent should be reduced, there can be no doubt that the lessee, as well as the lessor's directors, would be liable. Whether in the actual circumstance either a quasi-contractual action for unjust enrichment or a tort action would lie against the lessee, we need not decide. In any event, an action could have been brought to set aside the contracts which reduced the rent and in such an action damages of nearly $300,000 could have been awarded against the lessee. The appellees reply that any right of action against the lessee, or indeed any right of action against the lessor's faithless directors, belonged to the lessor, not to the bondholders with whom the lessee made settlement. We need not determine whether the bondholders, merely as creditors of the lessor, could have

3. The agreement further provided that upon payment of the full sum of $132,960 the lessee would have an option to purchase the bonds and stock of the lessor owned by the bondholders for $75,000, payable ratably and in installments of $5,000 quarterly.

4. During the period from December 1942 to December 31, 1948, the lessee in fact did pay to the bondholders $132,960.

5. The lessor's balance sheet for 1942 showed it to be insolvent by more than $100,000.

6. See Welch v. Helvering, 290 U.S. 111, 114, 54 S.Ct. 8, 78 L.Ed. 212; Friedman v. Delaney, 1 Cir., 171 F.2d 269, 271, certiorari denied 336 U.S. 936, 69 S.Ct. 746, 93 L.Ed. 1095; A. Giurlani & Bro. v. Commissioner, 9 Cir., 119 F.2d 852, 857.

prosecuted on its behalf its claim against the lessee.[7] They were also stockholders and as such could have brought the usual derivative action on the corporation's behalf. In such an equitable suit, the decree could be so framed by the appointment of a receiver or otherwise that whatever was collected should be distributed pro rata to the bondholders.[8] Hence, we conclude, as did counsel for the lessee, that there was a substantial basis for the claim asserted against the lessee by the bondholders of the lessor.

■■■ This conclusion is enough to make the compromise payment a "necessary" expense for purposes of deduction under § 23(a) (1) (A) of the Code, for a compromised claim need not be so perfect as to foreclose the possibility of its defeat if litigated.[9] Good faith business judgment is the test, and the law does not require infallible foresight.[10] We are also satisfied that the expense was "ordinary." As stated by Justice Cardozo in Welch v. Helvering, 290 U.S. 111, at page 114, 54 S.Ct. 8, at page 9, 78 L.Ed. 212: "Ordinary in this context does not mean that the payments must be habitual or normal in the sense that the same taxpayer will have to make them often. A lawsuit affecting the safety of a business may happen once in a lifetime. The counsel fees may be so heavy that repetition is unlikely. None the less, the expense is an ordinary one because we know from experience that payments for such a purpose, whether the amount is large or small, are the common and accepted means of defense against attack." We find nothing to the contrary in Deputy v. Du Pont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416, which on completely different

facts held the transactions there involved to be not "ordinary." In the words of Justice Douglas, 308 U.S. at page 495, 60 S.Ct. at page 367, "it must be of common or frequent occurrence in the type of business involved." In the case at bar the transactions giving rise to the claim against the taxpayer were dealings between two corporations having common directors. In such a situation unhappily it is not uncommon for the majority directors at times to use their powers for the benefit of one corporation and to the detriment of the other. The resulting claim was settled in good faith for less than one-half the amount for which the taxpayer might have been held liable. We hold it to have been an "ordinary and necessary expense * * * incurred * * * in carrying on" the taxpayer's business, and hence deductible under § 23(a) (1) (A). Whether it might also be considered a "loss" deductible under § 23(f) we need not consider.

Other arguments advanced by the appellees may be dealt with very summarily. The assertion that the settlement payments should be considered as additional rent for the years in which they were paid finds no support in the language of the agreement. Nor do we see any merit in the contention that they were partly in payment for the option to purchase the bonds exercisable after they had been paid in full. Finally it is urged that the settlement agreement was concluded after December 31, 1942 and hence the deduction, if proper, must be taken in a later year. This appears to be an afterthought and is directly contrary to paragraph 24 of the stipulated facts.

The judgment is reversed and cause remanded for entry of judgment for appellant.

---

7. Cf. dicta in Adcock v. New Crystal Ice Co., 144 Tenn. 511, 515–516, 234 S.W. 336.

8. See Jenkins v. Bradley, 104 Wis. 540, 562–563, 80 N.W. 1025; Spaulding v. North Milwaukee Town Site Co., 106 Wis. 481, 496–497, 81 N.W. 1064; Sale v. Ambler, 1939, 335 Pa. 165, 6 A.2d 519, 521–522; Alexander v. Quality Leather Goods Corp., 150 Misc. 577, 269 N.Y.S. 499, 503–504; 18 C.J.S., Corporations, § 578.

9. William L. Butler, 17 T.C. 675, 680; Great Island Holding Corp., 5 T.C. 150, 163.

10. " * * * business, like everything else, can only be conducted upon prophecies, and prophecies are never infallable", Judge Learned Hand in Levitt & Sons v. Nunan, 2 Cir., 142 F.2d 795, 798. See also Dunn & McCarthy, Inc., v. Commissioner, 2 Cir., 139 F.2d 242.