**MONTANA POWER COMPANY**

v.

**UNITED STATES.**

No. 98–56.

United States Court of Claims.

April 8, 1959.

Karl W. Kolbe, Jr., New York City, for plaintiff. E. Roy Gilpin, New York City, was on the briefs.

John A. Rees, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. James P. Garland and Philip R. Miller, Washington, D. C., were on the brief.

WHITAKER, Judge.

This suit was originally filed by the American Power & Light Company, as transferee in dissolution of Glacier Production Company, the taxpayer here involved, to recover Federal income and excess profits taxes for the period January 1, 1944, to December 14, 1944. On June 18, 1958, by leave of court, the Montana Power Company, the assignee of this claim, was substituted as party plaintiff. (Hereinafter American Power & Light Company will be referred to as American; Montana Power Company, as Montana; Glacier Production Company, as Glacier; and Inland Empire Refineries, as Inland.)

The legal question presented is the deduction to which plaintiff is entitled, either as a loss or as an expense, if any at all, as a result of a settlement, effected in 1944, between Glacier and Inland, and the basis for the computation of that deduction.

Glacier, prior to its dissolution in 1944, was engaged in the producing and refining of natural gas and crude oil in Montana and adjacent areas. All of Glacier's stock was owned by Montana, and in turn 93.73 percent of the voting stock of Montana was owned by American. Among other assets, Glacier owned 32,894 shares of stock in Inland, an independent company, which owned and operated a gasoline refinery at Spokane, Washington. Glacier also had a ten-year contract with Inland, entered into in 1938, in which Glacier promised to supply Inland with all its crude oil requirements.

Prior to December 1943 the Securities and Exchange Commission, acting under the authority of the Public Utility Holding Company Act of 1935, 49 Stat. 803, 15 U.S.C.A. § 79 et seq., ordered the dissolution of American Power and Light Company, a holding company. As a step toward complying with this order, Montana in November 1943 entered into an agreement with American, its parent, subject to the approval of the Securities and Exchange Commission, to sell to American all the outstanding stock of Glacier and $3,690,000 principal amount of Glacier's ten-year 6 per cent debentures. In return for this transfer, Montana was to receive $10,000,000 from American and, after Glacier's dissolution, all of Glacier's natural gas-producing properties. At the same time American entered into a contract with the Union Oil Company of California, an independent oil corporation, under which American agreed to sell Glacier's oil production properties and the Inland stock, in return for which Union was to pay American $10,000,000.

In December 1943, American, Montana and Glacier instituted proceedings in the Securities and Exchange Commission seeking approval of this proposed transaction. Inland objected to this plan and intervened in the proceeding in an effort to defeat it. Inland at this time was in direct competition with Union as an oil refiner. By the sale of Glacier's oil properties to Union, Inland would lose its basic source of supply of crude oil necessary for its business and the advantage of its long-term requirements contract with Glacier. This, and the undesirability of having approximately one-third of its stock in the hands of its competitor, was the basis of Inland's objection to American's plan.

The trial examiner of the Securities and Exchange Commission disapproved the proposed sale to Union on the ground that it was not fair and equitable to the persons affected, i.e., to Inland and its stockholders, other than Glacier. To satisfy Inland, an offer of settlement was made by Glacier, whereby Glacier would surrender to Inland the 32,894 shares of Inland stock which it then held and pay it the amount of $120,000. This settlement was accepted by Inland in settlement of all its claims against Glacier. This agreement was approved by the Securities and Exchange Commission in an opinion dated December 1, 1944, and was duly carried out by the parties involved.

In its final income tax return for the period of January 1, 1944, to December 14, 1944, Glacier claimed a deduction of $448,940, representing the cash payment

of $120,000 to Inland and $328,940, the alleged cost to Glacier of the 32,894 shares of Inland stock transferred by it to Inland. Upon audit a revenue agent allowed the deduction of the entire amount; but, upon reaudit by another revenue agent, only $220,000 was allowed, which represented the $120,000 cash payment to Inland and $100,000, which the Commissioner of Internal Revenue determined was the value of the Inland stock on the date of its surrender by Glacier.

Plaintiff claims the deduction of the entire amount as a loss under section 23(f).[1] In the alternative, it claims this amount as an ordinary and necessary business expense under section 23(a)(1) (A).[2]

We can see no basis for the claim that the amount paid is deductible as a loss under section 23(f). There was but one reason for the surrender to Inland of its stock held by Glacier: this was Inland's protest against the transfer to its competitor of Glacier's oil-producing properties, making it impossible for it to fulfill its obligations under its 10-year contract to supply Inland with crude oil, and its protest against the transfer to its competitor, at the same time, of 32,894 shares of its stock. This protest held up the whole plan. In order to eliminate this protest, and in order to be absolved of liability on its 10-year contract, Glacier surrendered Inland's stock to it and paid it the cash consideration of $120,-000.

The stock surrendered and cash paid were amounts spent to be relieved of an obligation and to effectuate a plan the taxpayer thought advantageous to it under the existing conditions. They are deductible, not as a loss, but as a business expense. E.g., C. Ludwig Baumann & Co. v. Marcelle, 2 Cir., 203 F.2d 459.

The rule for determining the amount of such a deduction with respect to the stock is to take the fair market value of the thing transferred to accomplish the taxpayer's purposes, that is to say, in this case, the fair market value at the time of the transfer of the Inland stock. The Commissioner of Internal Revenue assigned a value to it of $100,-000. Whether this is the right figure will be determined upon further proceedings.

Glacier is also entitled to a capital loss, in addition to the amount allowable as an expense. In the agreed statement of facts it is stated that Glacier had received these shares of stock in payment for crude oil it had delivered to Inland at an agreed value of $328,940. If this agreed value was its true value, and if $100,000 was the value of the stock at the time it was surrendered to Inland, then Glacier has sustained a capital loss of $228,940.

Had Glacier and Inland agreed on a figure to be paid in cash and, to raise the cash, Glacier had sold its Inland stock to a third party, plainly it would have been entitled to deduct as a capital loss the difference between the cost of acquisition and its selling price. Here, instead of selling the stock and paying cash to Inland, it transferred the stock to it directly. In either case it is entitled to a capital loss measured by the difference in the cost of acquisition and the value at the time of the transfer.

It results, therefore, that plaintiff is entitled to deduct, in addition to the $120,000 payment, the fair market value of the Inland stock at the time it was surrendered, as a business expense, and it also is entitled to deduct the difference between the cost of acquisition of this stock and its fair market value on the surrender date, as a capital loss. Judgment will be entered to this effect. Since

---

1. Section 23(f), (26 U.S.C.1952 ed.): "*Losses by corporation.* In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise."

2. Section 23(a) (1) (A) (26 U.S.C. 1952 ed.): "*In general.* All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *."

there is a dispute between the parties as to both the fair market value and the cost of acquisition, it is necessary to refer the case to a commissioner of this court, pursuant to Rule 38(c), 28 U.S.C., to determine these values.

It is so ordered.

JONES, Chief Judge, and LARA-MORE and MADDEN, Judges, concur.