PETER E. MAXWELL AND HELEN E. MAXWELL,
PETITIONERS v. COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT

HI LIFE PRODUCTS, INC., PETITIONER v. COMMISSIONER
OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 37185-86, 37186-86.[1]    Filed July 31, 1990.

*Jeffrey R. Matsen, Gregory K. Wanlass,* and *Robert K. Strouse,* for the petitioners.
*Joseph E. Mudd* and *Laura Karlak,* for the respondent.

## FINDINGS OF FACT

RUWE, *Judge:* Respondent determined a deficiency of $64,185 in Peter E. Maxwell's and Helen E. Maxwell's Federal income tax for the taxable year ending December 31, 1977. In a separate notice of deficiency, respondent determined a deficiency of $58,800 in the Federal corporate income tax of Hi Life Products, Inc., for its taxable year ending October 31, 1977. The issues for decision are: (1) Whether petitioner Hi Life Products, Inc., is entitled to deduct as an ordinary and necessary business expense under section 162(a)[2] a payment of $122,500 made to Peter E. Maxwell; and (2) whether petitioner Peter E. Maxwell is entitled to exclude from income, as damages on account of

---

[1] On June 30, 1988, this Court granted respondent's motion to consolidate the case at docket No. 37186-86 with the case at docket No. 37185-86 for trial, briefing, and opinion.

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

personal injuries under section 104(a)(2), a payment of $122,500 received from Hi Life Products, Inc.

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference.

Petitioners Peter E. Maxwell and Helen E. Maxwell are husband and wife who resided in Anaheim Hill, California, at the time they filed their petition in these consolidated cases. They timely filed their joint Federal income tax return for the taxable year ending December 31, 1977, with the Internal Revenue Service Center in Fresno, California.

Petitioner Hi Life Products, Inc. (Hi Life), is a California corporation. Hi Life's principal place of business was in Chino, California, when it filed its petition in these consolidated cases. Hi Life timely filed its Federal corporate income tax return for the taxable year ending October 31, 1977, with the Internal Revenue Service Center in Fresno, California.

Unless otherwise stated, "petitioner" shall hereinafter refer only to Mr. Maxwell, and "petitioners" shall hereinafter collectively refer to Mr. Maxwell and Hi Life.

Hi Life was organized on or about August 6, 1976, by petitioner and Mrs. Maxwell, and engages in the manufacturing of urethane foam carpet padding. At all relevant times, the shareholders of Hi Life and their respective percentage of shares of stock owned were as follows:

| Shareholder | Percentage of stock owned |
| --- | --- |
| Peter E. Maxwell | 47.5% |
| Helen E. Maxwell | 47.5% |
| Alan Sadler | 2.5% |
| Marlene Sadler[3] | 2.5% |

Petitioner was president of Hi Life and acted as the general manager of Hi Life's operations. In this capacity petitioner was responsible for sales, purchase of major materials, and engineering of plant equipment. Mrs. Maxwell was the executive vice president, secretary, and treasurer of Hi Life, and was responsible for all of Hi Life's financial matters. Mr. Sadler was vice president of Hi Life and was also the plant manager. As plant manager, Mr. Sadler was responsible for maintenance and safety of the

---

[3]Mrs. Maxwell and Mrs. Sadler are sisters.

machines used at the plant. Mrs. Sadler was the assistant secretary/treasurer. In this capacity, she acted as an order entry and purchasing clerk. During 1977, Hi Life's board of directors was comprised of petitioner, Mrs. Maxwell, and Mr. Sadler.

At the time Hi Life was incorporated, petitioner had approximately 19 years' experience working in the urethane foam industry. During the 3 years prior to Hi Life's incorporation, petitioner was employed by Remco Industries in the position of technical director. While employed at Remco Industries, petitioner set up a manufacturing operation for the production of carpet padding, and assembled machinery used in the manufacture of carpet padding. During the year prior to Hi Life's incorporation, petitioner and Mr. Sadler acquired and assembled component parts of the equipment to be used at Hi Life. Hi Life began its manufacturing operations in November 1976.

On or about September 24, 1976, all four officers of Hi Life (the Maxwells and the Sadlers) signed a State of California compensation fund statement to exclude all executive officers of Hi Life from coverage under Hi Life's workers' compensation policy. The officers excluded themselves from coverage in order to reduce the insurance premiums.

One of the pieces of equipment used at Hi Life is a mixing machine that was designed by petitioner and assembled at Hi Life's plant during February 1977. In its simplest form, the mixing machine is composed of mixing tanks, a pump, a conveyor, a mixing jet, and a mixing agitator. It is used by Hi Life to make low-grade urethane foam which is known in the carpet manufacturing industry as "scrap."[4] During the manufacturing process, several liquids are mixed in the machine's mixing chamber and the resulting foam scrap is deposited onto a moving conveyor that is lined with a thin film. The scrap is then used to make carpet padding.

During the operation of the machine, a cylinder rotates at approximately 3,600 revolutions per minute. The shaft of

---

[4]This mixing machine is not an integral part of Hi Life's operations. It is only used at Hi Life when the market price of readymade urethane foam "scrap" exceeds the cost of manufacturing scrap from raw materials. The mixing machine is still used periodically in Hi Life's operations, and was last used in 1985.

the mixing agitator is inserted into and attached inside this rotating cylinder by a setscrew. This setscrew was designed to be flush with the outer wall of the rotating cylinder. After each use, the mixing machine is disassembled and cleaned by maintenance personnel at the plant.

On March 9, 1977, petitioner was injured while operating the mixing machine. The mixing machine had been operated on only one prior occasion, approximately 1 week before. At the time of the injury, petitioner had been training plant personnel to operate the mixing machine.[5] He failed to notice, however, that a bolt was protruding from the rotating cylinder in place of the flush setscrew. As petitioner was attempting to turn off the machine, his sweater sleeve caught on the protruding bolt, and he was pulled into the mixing machine. As a result, petitioner suffered serious injury including a fractured forearm, soft tissue lacerations, and second and third degree burns. The injury required surgery and the installation of a metal plate in his forearm. Petitioner experienced some loss of use of his forearm. Full use of petitioner's arm was not reacquired in 1977, and future surgery remained a possibility at that time.

Petitioner did not return to work at Hi Life for approximately 6 to 8 weeks after he was injured by the mixing machine. Even after petitioner resumed work at Hi Life, petitioner's workload was reduced for a period of time. Although petitioner's workload was distributed among the other officers at Hi Life, Mrs. Maxwell assumed most of petitioner's duties including duties related to sales. Mrs. Maxwell worked a minimum of 40 hours per week at Hi Life during its first fiscal year beginning November 1, 1976.

Approximately 2 months after he was injured, petitioner read a tax article in the Wall Street Journal about an employee's claim against an employer corporation which was partly owned by the employee. Following up on this, petitioner consulted Hi Life's corporate attorney, Floyd R. Brown, of Newport Beach, California. Attorney Brown informed petitioner that he might have a claim against Hi Life, but recommended that he seek outside counsel and referred petitioner to several other attorneys. Petitioner subsequently retained attorney Tristan Pico to handle his

---

[5]During 1977, Hi Life employed between 15 and 20 employees in the manufacturing plant.

claim against Hi Life. For services rendered, Mr. Maxwell paid attorney Pico a flat fee retainer of $4,000, no part of which was reimbursed by Hi Life. Attorney Brown provided professional services to Hi Life with regard to the personal injury claim of petitioner and billed Hi Life for those services.

On October 18, 1977, attorney Pico sent a demand letter to attorney Brown which proposed that Hi Life pay the sum of $125,000 in settlement of petitioner's claim, with a $12,500 increase in the award as a penalty for Hi Life's willful failure to insure as required under California Labor Code section 3700, as well as a claim for reasonable attorney's fees. The demand letter contained an analysis of the aforementioned facts. The demand letter also stated that petitioner anticipated that he would have to undergo two additional operations, which could not be performed for at least 18 months, before he would regain complete use of his forearm. The demand letter also analyzed the law upon which the claim was based as follows:

*Worker's Compensation Coverage*

On the date of the accident, Hi Life was a California corporation and, as we have been informed by your office, held a Worker's Compensation insurance policy which covered all of the employees except the officers and directors of the corporation.

According to Labor Code Section 3351, officers and directors of a corporation may be excluded from the Worker's Compensation Act if they are the sole shareholders of the corporate stock. Hi Life has a stockholder who is an officer but not a director, therefore its officers and directors fall within the Act.

This interpretation is given to the code section mentioned above in that the law in question was passed in the public interest, and like all public interest laws, should be given a broad interpretation in favor of bringing individuals under the auspices of the section. As you are well aware, even if such an interpretation should prove erroneous, the normal negligence, strict liability and breach of warranty causes of action against third parties would apply in this case.

Labor Code Section 3700 et. seq. requires the employer, in this case Hi Life, to obtain insurance to secure payment of compensation, or to establish a plan of self insurance. Neither of these requirements were met by your client.

Failure to provide such insurance or to certify a self insurance plan allows the injured party to either bring an action through the Worker's Compensation Appeals Board or to file a lawsuit in a court of competent jurisdiction. If such a lawsuit or claim is filed, there is a presumption of negligence on the part of the employer in causing the injury to the employee (Labor Code Section 3708). Additionally, the traditional defenses of contributory negligence, assumption of risk and fellow servant rule are all abrogated (Labor Code Section 3708).

As is now readily apparent, Hi Life would be hard pressed to defend itself in an action based on negligence and would be in even more serious straits if Mr. Maxwell were to pursue his rights based on strict liability or breach of warranty.

Any judgment or award includes a reasonable attorneys' [sic] fee (Labor Code Section 3709). Additionally, Labor Code Section 4554 allows for a ten per cent increase of award where the failure to insure is willful.

We have been informed that the vice president of Hi Life had the officers and directors excluded when the original policy of Worker's Compensation was negotiated in 1976. Labor Code Section 4554 directs that failure to obtain insurance or to obtain authorization for self insurance is prima facie evidence of willfulness.

The question of willfulness is broadly construed in favor of the claimants in the case of *Goodhew vs. Indemnity Accident Commission* (1958) 157 C.A.2d 252, 320 P.2d 515. The decedent president of a small corporation had been informed by his insurance broker that coverage for the officers and directors of the corporation was required by law but by exluding [sic] them a savings on the premium could be experienced. The president authorized the exclusion. On his demise, his widow collected a death benefit, but the Commission refused to add ten per cent based on the lack of intent to violate the law, that is, a lack of willfulness.

Subsequently, the court ruled the term willful as used in the statute meant only "conscious, intentional and deliberate." It was intended merely to exclude failure to insure through ignorance or inadvertence (157 C.A.2d 257).

With this in mind it would appear that the corporation should be prepared to pay the full value of the claim for personal injury, a reasonable attorneys' [sic] fee based thereon, and ten per cent increase in the settlement because of the willfulness of the failure to insure.

The demand letter finally provided that the offer would be withdrawn and a lawsuit filed if the demand was not met by October 24, 1977. No lawsuit was ever filed against Hi Life on petitioner's behalf.

Attorney Brown performed research into the legal issues raised by the demand letter, and concluded that Hi Life was liable for petitioner's injuries. His conclusion was based on Hi Life's failure to obtain workers' compensation coverage for petitioner. Attorney Brown also performed research into the tax consequences of petitioner's claim. He subsequently contacted Mrs. Maxwell and recommended to her that Hi Life settle petitioner's claim.

On or about October 28, 1977, approximately 10 days after attorney Pico sent the demand letter to attorney Brown, petitioner called a special meeting of the board of directors for the purpose of considering his settlement offer. Present at the meeting were petitioner, Mrs. Maxwell, Mr. Sadler, and attorney Brown. Attorney Pico was not present. Although petitioner was a member of the board of directors, he excused himself from consideration of the matter. Attorney Brown recommended to the board of directors that Hi Life settle petitioner's claim for the total sum of $122,500. The board of directors, consisting of Mrs. Maxwell and Mr. Sadler, unanimously decided to settle petitioner's claim for the sum of $122,500.

The parties have stipulated, and we find, that the reasonable monetary value of the injuries suffered by petitioner was $122,500.[6]

On the same day as the meeting of the board of directors, petitioner signed a "General Release of all Claims," in which petitioner agreed to release his claim against Hi Life in consideration for $122,500. Petitioner did not, however, agree to release any claims against Hi Life for any injuries that may have resulted from corrective or cosmetic surgery as part of petitioner's remaining care and treatment for his injuries. Pursuant to this settlement, Hi Life issued two checks to petitioner. One check, dated October 31, 1977, was in the amount of $72,500; a second check in the amount of $50,000 was dated November 19, 1977. In addition, Hi Life compensated petitioner for his medical expenses resulting from the injuries he sustained from the mixing machine. Petitioner's medical expenses for the year 1977 were

---

[6]Respondent has not stipulated that Hi Life was liable to compensate petitioner for his injuries.

$6,334.59. An additional $77 was paid for medical services in 1978, for a total of $6,411.59.

On its corporate Federal income tax return for the taxable year ending October 31, 1977, Hi Life deducted $122,500 as a "miscellaneous office expense" under section 162(a). This return was prepared by the accounting firm of Haskins & Sells.

Petitioner reported receipt of $10,000 in salary from Hi Life in 1977.[7] Mrs. Maxwell did not report the receipt of any salary or compensation from Hi Life for the year 1977. Mr. Sadler was paid $38,703 in salary and Mrs. Sadler was paid $7,567 in salary from Hi Life during the fiscal year ended October 31, 1977. On their individual tax return for the calendar year ending December 31, 1977, petitioner and Mrs. Maxwell did not report the $122,500 as part of their gross income.

Respondent determined that the $122,500 payment by Hi Life to petitioner was a dividend. He, therefore, determined that petitioner's 1977 taxable income should be increased by $122,500, and disallowed Hi Life's claimed deduction of the same $122,500.

### OPINION

Resolution of both issues in these consolidated cases depends upon our characterization of the $122,500 that Hi Life paid to petitioner during 1977. Petitioners argue that the $122,500 that Hi Life paid to petitioner is: (1) Properly deductible by Hi Life under section 162(a), as a payment in settlement of petitioner's personal injury claim against Hi Life; and (2) excludable from petitioner's gross income under section 104(a)(2) as a payment for damages received on account of personal injuries.

Respondent argues that petitioners have failed to prove that the $122,500 that Hi Life paid to petitioner was paid

---

[7]Although petitioner reported salary in the amount of $10,000 from Hi Life during taxable year 1977, Hi Life's corporate income tax return (Form 1120) for taxable year ending Oct. 31, 1977, reflects that it deducted compensation to petitioner in the amount of $58,000. At the calendar call, on Oct. 11, 1988, respondent submitted a motion to amend the answer to increase petitioner's deficiency on the basis that petitioner had constructively received additional compensation from Hi Life in the amount of $48,000 during 1977. We took respondent's motion under advisement. However, at trial, on Oct. 14, 1988, respondent withdrew his motion.

on account of petitioner's personal injuries. Respondent determined that the payment from Hi Life to petitioner was a disguised dividend to petitioner and, therefore, not deductible by Hi Life, and not excludable from petitioner's gross income.[8] Respondent's determination is presumed correct and petitioners bear the burden of proving otherwise. *Welch v. Helvering,* 290 U.S. 111 (1933); Rule 142(a).

Section 162(a) allows as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Amounts paid or accrued by a taxpayer on account of injuries received by employees and lump-sum amounts paid or accrued as compensation for injuries are proper deductions as ordinary and necessary expenses. The amount deductible, however, is limited to the amount not compensated for by insurance or otherwise. Sec. 1.162-10(a), Income Tax Regs. There is no evidence in the record suggesting, and respondent does not argue, that Hi Life was compensated by insurance or otherwise for the $122,500 that it paid to petitioner. Thus, Hi Life is entitled to a deduction for the $122,500 that it paid to petitioner, if such payment was paid to petitioner as compensation for his personal injuries.

Section 61(a) defines gross income as "all income from whatever source derived." Under section 104(a)(2), however, gross income does not include "the amount of any damages received (whether by suit or agreement) on account of personal injuries or sickness." Section 1.104-1(c), Income Tax Regs., provides that "The term 'damages received (whether by suit or agreement)' means an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." The determination of whether a litigation settlement payment is exempt from taxation depends upon the nature of the claim and not the validity of the claim. *Miller v. Commissioner,* 93 T.C. 330, 334 (1989); *Threlkeld v. Commissioner,* 87 T.C. 1294, 1297 (1986), affd. 848 F.2d 81

---

[8]On brief, respondent asks us to find that "at least" $76,000 of the $122,500 that Hi Life paid to petitioner should be attributable to compensation paid to petitioner and Mrs. Maxwell during 1977, and the remaining portion attributable to a constructive dividend.

(6th Cir. 1988); *Fono v. Commissioner,* 79 T.C. 680, 696 (1982), affd. without opinion 749 F.2d 37 (9th Cir. 1984).

In these consolidated cases, it is undisputed that petitioner sustained damages from physical injuries resulting from the operation of the mixing machine at Hi Life's plant. Respondent has stipulated that the reasonable value of petitioner's injuries is $122,500. Respondent does not contend that petitioner's injuries are not included within the scope of section 104(a)(2). Thus, if it is determined that the payment from Hi Life to petitioner was to compensate petitioner for his physical injuries and to settle his claim for damages, then petitioner is entitled to exclude that amount from his gross income. Sec. 104(a)(2).

We find that the $122,500 that Hi Life paid to petitioner was paid to petitioner to settle his claim for damages from the injuries he sustained while operating the mixing machine, on March 9, 1977, and was received by petitioner as damages on account of his personal injuries sustained from the mixing machine. Thus, Hi Life is entitled to a deduction in this amount under section 162(a), and petitioner is entitled to exclude this amount from his gross income under section 104(a)(2).

In rendering our decision, we are mindful that the settlement transaction between Hi Life and petitioner was a transaction between a closely held corporation and its president who, along with his wife, were the controlling shareholders. Under the facts of these consolidated cases, petitioner and Hi Life could not be said to have been dealing at arm's length. We must, therefore, carefully scrutinize the settlement transaction between petitioner and Hi Life. *Tulia Feedlot, Inc. v. United States,* 513 F.2d 800, 805 (5th Cir. 1975); *Ingle Coal Corp. v. Commissioner,* 174 F.2d 569, 571 (7th Cir. 1949); *Levenson & Klein, Inc. v. Commissioner,* 67 T.C. 694, 711 (1977).

On brief, respondent argues that petitioner and Hi Life were not dealing at arm's length and that the settlement transaction was solely tax motivated. Respondent relies on the following factors: petitioner and Mrs. Maxwell were the founding and controlling shareholders of Hi Life; Hi Life's officers had previously excluded themselves from coverage under Hi Life's workers' compensation policy; petitioner

first learned that he might have a legal claim against Hi Life from a tax article in the Wall Street Journal; and the settlement was reached within 13 days of the mailing of the demand letter which was just before the end of Hi Life's taxable year.

Respondent points out that petitioner received only $10,000 in wages from Hi Life during 1977 and Mrs. Maxwell did not receive any wages during 1977, while Mr. and Mrs. Sadler collectively received compensation from Hi Life in the amount of $46,270 during 1977. Respondent concludes that a substantial portion of the $122,500 paid to petitioner was actually compensation for personal services and dividends, as opposed to a payment to compensate petitioner for his personal injuries.

Although the points on which respondent relies cause us to give close scrutiny to the transaction in issue, the cold hard facts do not lead in the direction respondent would have us go. Petitioner sustained genuine and serious physical injuries. These injuries were sustained in his employment by Hi Life. The injuries were caused (at least in part) by the improper placement of a bolt in lieu of a setscrew on a mixing machine used at Hi Life. Petitioner's personal injuries were reasonably valued at $122,500. The only remaining question to be resolved is whether petitioner's legal claim was the reason for Hi Life's payment of $122,500 to petitioner. If it was, then the amount paid is deductible by Hi Life and excludable by petitioner.

In determining whether the form of a transaction between closely related parties has substance, we should compare their actions with what would have occurred if the transaction had occurred between parties who were dealing at arm's length. *Peck v. Commissioner,* 904 F.2d 525 (9th Cir. 1990), affg. 90 T.C. 162 (1988); *Harmon City, Inc. v. United States,* 733 F.2d 1381, 1383 (10th Cir. 1984); *Levenson & Klein, Inc. v. Commissioner, supra* at 715. One would normally expect unrelated parties who were involved in a claim for damages resulting from serious personal injuries to consult legal counsel in order to get an informed opinion regarding their respective rights and liabilities. Petitioner and Hi Life each retained independent legal counsel. Petitioner's attorney advised him that he had a legal claim

against Hi Life and that based upon Hi Life's failure to secure workers' compensation, the traditional defenses of contributory negligence, assumption of risk, and fellow servant rule were abrogated. Hi Life's board of directors was advised by its own attorney that payment of damages was reasonable in light of the circumstances and applicable California law. There is nothing in the record to show that this legal advice was given in bad faith or that petitioners were not entitled to rely upon it in good faith.

Attorney Pico, who represented petitioner in his claim against Hi Life, outlined his theory of legal liability in the demand letter that he sent to attorney Brown. We claim no special expertise in the area of California workers' compensation, and we believe it unnecessary for us to decide the correctness of attorney Pico's theory of liability in order to determine whether it was reasonable for petitioner and Hi Life to have followed the advice of their attorneys. *Old Town Corp. v. Commissioner*, 37 T.C. 845, 860-861 (1962). See *Naporano Iron & Metal Co. v. United States*, 6 Cl. Ct. 422 (1984). (It is unnecessary for the Court to speculate what would have happened if the claim settled had proceeded to trial.) We have, however, looked at California law and believe attorney Pico made out a rational claim on petitioner's behalf.

The California Workers' Compensation Act provides a compulsory and exclusive scheme of employer liability without fault based upon insurance concepts. *Logan v. Masters*, 120 Cal. App. 3d 146, 147, 174 Cal. Rptr. 465, 466 (1981). Generally, under the California Workers' Compensation Act, every employer is required to secure payment of compensation by either obtaining compensation insurance from an authorized insurer, or by securing a certificate of consent to self-insure from the Director of Industrial Relations.[9] Labor Code sec. 3700.[10] The term "employer" includes "Every person * * * which has any natural person in service." Labor Code sec. 3300(c). The term "employee"

---

[9]The term "compensation," within the meaning of the California Workers' Compensation Act, is defined as "every benefit or payment conferred by [Labor Code] Division 4 [California Workers' Compensation Act] upon an injured employee, including vocational rehabilitation, or in the event of his death, upon his dependents, without regard to negligence." Labor Code sec. 3207.

[10]Unless otherwise indicated all section references to "Labor Code" shall refer to the California Labor Code (West 1989).

generally includes officers and members of boards of directors of private corporations. Labor Code sec. 3351(c).

Under the California Workers' Compensation Act, an employer is liable for compensation to his or her employee for injuries sustained by the employee arising out of and in the course of employment. Labor Code sec. 3600(a).[11] The California Workers' Compensation Act provides an exclusive remedy against an employer for work-related injuries. Labor Code sec. 3601; *Eckis v. Sea World Corp.,* 64 Cal. App. 3d 1, 6, 134 Cal. Rptr. 183, 186 (1976). Workers' compensation benefits, however, are not an injured employee's exclusive remedy where an employer fails to secure payment for compensation. Labor Code sec. 3706; *Rymer v. Hagler,* 211 Cal. App. 3d 1171, 1177, 260 Cal. Rptr. 76, 79 (1989).

If an employer who is required to secure payment of compensation fails to do so, then any injured employee may file an application for compensation with the Industrial Accident Commission and, in addition, bring an action at law against such employer for damages. Labor Code sec. 3706; *Rymer v. Hagler, supra; Logan v. Masters, supra* at 146; *Goodman Bros. v. Superior Court,* 51 Cal. App. 2d 297, 124 P.2d 644, 647 (1942). The right of the injured employee to bring an action at law for damages may be exercised independently of any proceeding before the Industrial Accident Commission. *Chakmakjian v. Lowe,* 33 Cal. 2d 308, 201 P.2d 801, 801-802 (1949); *Hall v. Burton,* 201 Cal. App. 2d 72, 19 Cal. Rptr. 797, 801 (1962). In such action, California Labor Code section 3708 provides in pertinent part:

In such action it is presumed that the injury to the employee was a direct result and grew out of the negligence of the employer, and the

---

[11]Labor Code section 3600(a) provides in pertinent part:

Liability for the compensation provided by this division, in lieu of any other liability whatsoever to any person * * * shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment * * * in those cases where the following conditions of compensation concur:

(1) Where, at the time of the injury, both the employer and the employee are subject to the compensation provisions of this division.

(2) Where, at the time of the injury, the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment.

(3) Where the injury is proximately caused by the employment, either with or without negligence.

burden of proof is upon the employer, to rebut the presumption of negligence. It is not a defense to the employer that the employee was guilty of contributory negligence, or assumed the risk of the hazard complained of, or that the injury was caused by the negligence of a fellow servant * * * .[12]

Attorney Pico's theory of liability under the Labor Code was predicated on petitioner's status as an employee of Hi Life. The term "employee" includes:

All officers and members of boards of directors of * * * private corporations while rendering actual service for the corporations for pay; provided that, where the officers and directors of the private corporation are the sole shareholders thereof, the corporation and the officers and directors shall come under the compensation provisions of this division only by election as provided in subdivision (a) of Section 4151. [Labor Code sec. 3351(c)]

Attorney Pico's demand letter asserts that petitioner was an employee of Hi Life within the meaning of the California Workers' Compensation Act because:

According to Labor Code Section 3351, officers and directors of a corporation may be excluded from the Worker's Compensation Act if they are the sole shareholders of the corporate stock. Hi Life has a stockholder who is an officer but not a director, therefore its officers and directors fall within the Act.

Attorney Pico's interpretation of Labor Code section 3351(c) was that officers and directors are considered employees of private corporations under the California Workers' Compensation Act, unless all of the shareholders are *both* officers and directors. If this were the case, then Hi Life was required to secure payment for compensation, because Mrs. Sadler was only an officer and not a director. It would then follow that because Hi Life failed to secure payment for compensation for petitioner, petitioner had a right to bring an action at law for damages against Hi Life. Labor Code sec. 3706; *Strickland v. Foster,* 165 Cal. App. 3d 114, 117-118, 211 Cal. Rptr. 305, 306-307 (1985); *Logan v. Masters, supra.* In such action, Hi Life would have been

---

[12]Under California law, this statutory presumption of negligence of the employer is evidence. *Peters v. California Building-Loan Assn,* 116 Cal. App. 143, 2 P.2d 439, 442 (1931). It remains in the case to be weighed with conflicting evidence and may support a finding in the face of contradictory evidence. *Goss v. Fanoe,* 114 Cal. App. 2d 819, 251 P.2d 337, 340 (1952). It may be overcome, if there is substantial evidence to rebut it. *Hall v. Burton,* 201 Cal. App. 2d 72, 19 Cal. Rptr. 797 (1962).

presumed negligent and barred from asserting the common law defenses of contributory negligence, assumption of the risk, or fellow servant. Labor Code sec. 3708.

Respondent argues that attorney Pico's interpretation of section 3351(c) is incorrect, stating on brief that:

Although the demand asserted that "Hi Life has a stockholder who is an officer but not a director, therefore its officers and directors fall within the Act," petitioners have furnished no support for this interpretation of sec. 3351(c), and it is inconsistent with both the clear language and the purpose of the law. In effect, sec. 3351 allows officers of closely held corporations to elect to treat themselves as owners of the business.

Neither party cites any cases interpreting Labor Code section 3351(c) on this point and we have found none. We note, however, that the California Workers' Compensation Act is liberally construed, with the purpose of extending its benefits for the protection of persons injured in the course of their employment. Labor Code sec. 3202. When workers' compensation statutes are equally susceptible of more than one interpretation they are construed favorably to the employee. *Amborn v. Workmen's Compensation Appeals Board*, 19 Cal. App. 3d 953, 959, 97 Cal. Rptr. 466, 470 (1971).

Even if respondent's interpretation of section 3351(c) is correct, petitioner would appear to have been entitled to bring suit against Hi Life under California Labor Code, Division 3. In such action recovery for damages is based upon the employer's failure to exercise ordinary care. Labor Code sec. 2800. Slight contributory negligence on the part of the employee does not bar recovery, but damages may be reduced in proportion to the amount of negligence attributable to the employee. Labor Code sec. 2801.

It appears to us that the contemporaneous legal advice given to petitioners was reasonable.[13] More importantly, we find that petitioners' reliance on their attorneys was reasonable under the circumstances. The instant consolidated

---

[13]At trial, petitioners also offered the opinion of an attorney experienced in workers' compensation law, who concluded that Hi Life was illegally uninsured for workers' compensation with respect to petitioner. Respondent objected to the admission of this opinion on the ground that it had not been previously provided to respondent within the time limits set forth in rule 143(f). Over respondent's objection, we allowed this opinion to be admitted into evidence. Out of concern that respondent may not have had adequate time to prepare for cross-examination, we gave respondent the opportunity to cross-examine petitioner's witness at a later date. Respondent chose not to take advantage of this opportunity.

cases are analogous to the situation we faced in *Old Town Corp. v. Commissioner*, 37 T.C. 845 (1962), where a corporate taxpayer made a settlement payment in order to discharge a potential liability to its principal shareholder. Even though the settlement in *Old Town Corp.* was made on advice of counsel, respondent disallowed $100,000 of the claimed settlement amount of $117,128.78 on the ground that the amount did not constitute an ordinary and necessary business expense. In determining that the settlement was deductible, we stated:

The members of the board of directors were men of wide business knowledge. Nevertheless, the matter of liability of petitioner to McGraw [the controlling shareholder] was too highly technical for laymen to analyze. It is reasonable and ordinary for members of a board of directors in a situation such as this to rely upon the advice of their attorneys who are familiar with the law as well as the facts in the case. We cannot say that counsel's opinion was so baseless or erroneous that it was unreasonable for the directors to have relied upon it. Nor can we say from the record before us that counsel's opinion as to the substance of McGraw's claim was erroneous. The potential suit between McGraw and petitioner is not before us to be decided and we do not have all the facts before us. Pretrial examination of the parties concerning the transaction in issue resulted in excess of 2,800 pages of disputed testimony. The burden is not upon this Court to determine petitioner's liability to McGraw nor to predict the outcome of the New York courts. A taxpayer, acting in good faith with the intention of compromising a potential claim which he reasonably believes has substance, should not be denied a business deduction even if the facts finally indicate that it was unnecessary to pay the settlement. Here we cannot say with any degree of certainty that the expenditure did not help petitioner for we cannot, from the record before us, hold that there was no possibility of the New York courts holding petitioner liable to McGraw for reimbursement.

Petitioner acted reasonably and was justified in relying upon the advice of its counsel in determining that the expenditure in issue was a necessary one. See *John W. Clark*, 30 T.C. 1330 (1958); *C. Ludwig Baumann & Co. v. Marcelle*, 203 F.2d 459 (C.A. 2, 1953). We conclude that the payment of the compromise and legal expenses on behalf of McGraw was a necessary expense to petitioner's trade or business. Cf. *Catholic News Publishing Co.*, 10 T.C. 73 (1948). [*Old Town Corp. v. Commissioner, supra* at 860-861.] [14]

---

[14]Compare *Inland Asphalt Co. v. Commissioner*, 756 F.2d 1425 (9th Cir. 1985), affg. a Memorandum Opinion of this Court, where payments by a corporation of its shareholders' tax deficiencies constituted constructive dividends and not ordinary and necessary business expenses. The corporation's argument that the payment of its shareholders' tax deficiencies was made to settle potential tort claims against it was rejected. The corporation did not seek legal advice regarding the merits of the potential shareholders' suit against it and there was no evidence that the shareholders ever considered such suit against the corporation.

We find that the $122,500 payment from Hi Life to petitioner was in substance a payment in settlement of the injuries petitioner sustained from operation of the mixing machine. Thus, petitioner is entitled to exclude this amount from his gross income under section 104(a)(2), and Hi Life is entitled to a deduction in this amount under section 162(a).

We recognize that tax considerations played a part in petitioner's claim against Hi Life and in the ultimate settlement of that claim. In that respect, these cases are no different than cases in which we must determine whether corporate payments to an employee-stockholder are compensation for personal services or nondeductible dividends. The question in both instances is whether there was a reasonable basis, independent of tax considerations, for the taxpayer's characterization of the payment. The fact that settlement of petitioner's claim entitled Hi Life to a deduction and petitioner to exclude the $122,500 payment, does not vitiate the reasonableness of the underlying transaction. The fact that after petitioner sustained serious personal injuries, he consulted counsel and eventually entered into a settlement that had tax advantages, does not detract from the reasonableness of the settlement under the circumstances in these cases. Taxpayers have the legal right to decrease taxes, or avoid them altogether, by means which the law permits. The question is whether what was done, apart from the tax motive, was the thing which the law intended. *Gregory v. Helvering,* 293 U.S. 465, 469 (1935). In light of the facts in these cases, we hold that the law intended a deduction under section 162(a) for Hi Life and an exclusion for petitioner under section 104(a)(2).

*Decisions will be entered for the petitioners.*